AB:VAZ

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

SHANE MCINERNEY,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

AFFIDAVIT AND COMPLAINT
IN SUPPORT OF AN
**ARREST WARRANT**s

(T. 49, U.S.C., § 46504)

No. __22 MJ 22__

EASTERN DISTRICT OF NEW YORK, SS:

       MARK PALAGIANO, being duly sworn, deposes and states that he is a Special Agent of the Federal Bureau of Investigation, duly appointed according to law and acting as such.

       On or about January 7, 2022, the defendant SHANE MCINERNEY, while being an individual on an aircraft in the special aircraft jurisdiction of the United States, did knowingly and intentionally assault and intimidate a flight crew member of the aircraft, interfere with the performance of the duties of the member and lessen the ability of the member to perform those duties.

       (Title 49, United States Code, Section 46504)

       The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause for removal, I have not described all the relevant facts and circumstances of which I am aware.

1.      I am familiar with the facts and circumstances set forth below from my participation in the investigation; from my review of the investigative file; from reports of other law-enforcement agents involved in the investigation; and from law-enforcement interviews with witnesses, including passengers and flight crew members who were aboard the flight described below.  Unless specifically indicated, I report in this affidavit only in substance and part the contents of documents and the actions, statements, and conversations of others.

2.      In or about December 2019, a novel coronavirus known as "SARS-CoV-2" was first detected in Wuhan, Hubei Province of the People's Republic of China, causing outbreaks of the coronavirus disease 2019, also known as "COVID-19," that spread globally.

3.      On January 31, 2020, the Secretary of Health and Human Services declared a national public health emergency under 42 U.S.C. § 247d because of the spread of COVID-19 to and within the United States.  On March 11, 2020, the Director-General of the World Health Organization characterized COVID-19 as a pandemic.  Pursuant to 42 U.S.C. § 5191, the President of the United States issued the Proclamation 9994 of March 13, 2020, declaring a national emergency that began on March 1, 2020, because of the rapid spread of COVID-19 within the United States.  See Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, 85 Fed. Reg. 15,337 (Mar. 18, 2020).

4.      Because of the ongoing COVID-19 pandemic, the President of the United States issued an executive order on January 21, 2021, requiring that masks be worn on, among other things, commercial aircraft.  See Promoting COVID-19 Safety in Domestic and International Travel, 86 Fed. Reg. 7205 (Jan. 26, 2021).  On January 27, 2021, the Acting Secretary of Homeland Security determined that a national emergency existed.  As a result, the Transportation Security Administration ("TSA") issued and later extended the duration of

"several security directives and an emergency amendment mandating that masks be worn" on aircraft.  Corbett v. TSA, 19 F.4th 478, 481 (D.C. Cir. 2021).  The Centers for Disease Control and Prevention ("CDC") also has issued a similar order.  See id. at 481-82.

5. Under the TSA's directives, aircraft operators generally must "require passengers and employees to wear a mask 'covering the nose and mouth' 'at all times' while" in flight.  Id. at 481 (citation omitted).  Aircraft operators must notify passengers of the mask requirements and ask those passengers "to put on a mask if they are not wearing one."  Id.

6. "The COVID-19 global pandemic poses one of the greatest threats to the operational viability of the transportation system and the lives of those on it seen in decades."  Id. at 480.  "Transmission of COVID-19 to transportation workers," including flight crew members and attendants, "imperils transportation services."  Id. at 487.  "The uncontrolled spread of COVID-19 among passengers and these workers can lead to cuts in service" on aircraft.  Id.

7. The CDC has found that "appropriately worn masks reduce the transmission of COVID-19."  Id. at 488.  The CDC also has found that the "cumulative effect of universal masking" protects those transportation workers, "who frequently come into close contact with other people."  Id. (citation omitted).

8. On or about January 7, 2022, I was notified that there had been multiple disturbances on Delta Air Lines, Inc. ("Delta"), flight number 45 as it flew from the Dublin Airport, Ireland, to John F. Kennedy International Airport ("JFK") in Jamaica, New York.  I understand that the Delta airplane is an "aircraft" as defined in 49 U.S.C. § 40102(a)(6).

9. The defendant SHANE MCINERNEY had been a passenger on the above-referenced flight.  During the approximately eight-hour flight, the defendant repeatedly refused

3

to wear a facemask despite being asked dozens of times by flight crew personnel to put on a mask.

10. The defendant created numerous additional disturbances. At one point during the flight, the defendant threw an empty beverage can, which hit the head of Individual-1, who was a passenger on the above-referenced flight. At another point, the defendant kicked the back of the passenger seat in front of him, disturbing Individual-2, another passenger. Furthermore, the defendant, who had an economy-class seat, walked to the Delta One-class section of the airplane; complained about his food to Individual-3, one of the flight attendants; and—in the process of being escorted back to his seat—pulled down his pants and underwear and exposed his buttocks to Individual-3 and passengers sitting nearby. In addition, the defendant disobeyed the orders of flight attendants as the airplane was on final approach to JFK's runway, when the flight crew members, flight attendants, and passengers were buckled into their seats. Instead of remaining seated, the defendant stood up, left his seat, entered the aisle, and refused to sit back down.

11. Approximately two hours into the flight, Individual-4, the flight captain, was on his break and spoke with the defendant. During the conversation, the defendant twice took off his cap, placed the cap on Individual-4's head, and removed it from Individual-4's head. The defendant also put one of his fists up close to Individual-4's face and said: "Don't touch me."

12. At least one passenger found the defendant's conduct to be scary. Because of the defendant's numerous disturbances on the above-referenced flight, flight crew members considered diverting the airplane to another airport to remove the defendant before the completion of the trip. Moreover, in light of the totality of the defendant's conduct during the

flight, the flight crew members and flight attendants on the airplane repeatedly stopped their ordinary duties to address him.

13. I understand that the airplane on which the defendant was a passenger is a "civil aircraft of the United States" as defined in 49 U.S.C. §§ 40102(a)(17) and 46501(2)(a), in that it is registered by Delta under Chapter 441 of Title 49. I also understand that the airplane was "in flight," as defined in 49 U.S.C. § 46501(1), during the above-described events.

14. Upon landing of the airplane, officers with the Port Authority of New York and New Jersey escorted the defendant to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15. I request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the affidavit and arrest warrant. Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and arrest warrants via the Internet. Premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving the defendant an opportunity to flee from prosecution.

5

WHEREFORE, your deponent respectfully requests that the Court issue an arrest warrant under seal for the defendant SHANE MCINERNEY so that he may be dealt with according to law.

                                            */s/ Mark Palagiano*
                                         MARK PALAGIANO
                                         Special Agent
                                         Federal Bureau of Investigation

Sworn to before me by reliable electronic means
this 8th day of January, 2022.

/s/ Roanne L. Mann

THE HONORABLE ROANN L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

6